IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 16, 2016

**STATE OF TENNESSEE v. JILL ALYSE PATRICK**

**Appeal from the Circuit Court for Sullivan County**
**No. S63494   R. Jerry Beck, Judge**

———————————————————

**No. E2016-00741-CCA-R3-CD**

———————————————————

Defendant, Jill Alyse Patrick, appeals her conviction for facilitation of a violation of the sex offender registry as well as her resulting sentence of eleven months and twenty-nine days to be served on probation after the service of thirty days in incarceration. After a review of the evidence, we determine Defendant is not entitled to relief. However, a clerical error in the judgment requires our remand to the trial court for correction of the error. Accordingly, the judgment of the trial court is affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kenneth Hill, Kingsport, Tennessee, for the appellant, Jill Alyse Patrick.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

An affidavit of complaint was filed in the General Sessions Court of Sullivan County on November 1, 2013, alleging that Defendant allowed a registered sex offender, Timothy Wayne Smith, to live at her residence with her daughter, Alicia Patrick, and her daughter's three children. Alicia Patrick was Mr. Smith's girlfriend. The affidavit of complaint alleged Defendant violated Tennessee Code Annotated "39-11-403 Facilitation

of a violation of a sex offender (40-39-2011)[1] residential restrictions." As a result of the affidavit of complaint, an arrest warrant was issued.

Defendant was found guilty of facilitation of a violation of the sex offender registry in General Sessions Court. The trial court sentenced Defendant to eleven months and twenty-nine days, ordering Defendant to serve thirty days in incarceration with the remainder suspended to probation. The trial court also ordered Defendant to perform 240 hours of community service. Defendant appealed to the Sullivan County Circuit Court.

At the bench trial in Circuit Court, the State set forth proof of Mr. Smith's four prior convictions for carnal knowledge of a minor from the commonwealth of Virginia. Mr. Smith registered as a sex offender with the Bristol Police Department on September 30, 2013, where he provided an address of 1215 Windsor Avenue, Apartment 2, Bristol, Tennessee. He was accompanied by his girlfriend, Alicia Patrick, and her mother, Defendant. Ms. Patrick had at least one of her children with her at the police department that day. According to Lieutenant Debbie Richmond, Mr. Smith, Alicia Patrick, and Defendant "were advised" that Mr. Smith could not live with any children because of his prior convictions. At that time, Alicia Patrick had three minor children. Mr. Smith was not the biological father of any of the children.

Lieutenant Debbie Richmond had known Defendant for about twenty years and saw her enter the police station with Mr. Smith on the day that he registered as a sex offender. While Mr. Smith was registering as a sex offender in Tennessee, Defendant informed Lieutenant Richmond that Mr. Smith had just been released from jail in Virginia for violating the sex offender registry and that she promised the judge that Mr. Smith could live with her at her apartment. Lieutenant Richmond admonished Defendant that Mr. Smith could not live there if the children were living at her apartment. Mr. Smith was actually arrested on the day he registered as a sex offender because he did not register in a timely fashion.

Dannielle Eller, a detective with the Bristol Police Department, testified that she was the primary child abuse investigator and maintained the sex offender registry for the Bristol Police Department. On November 1, 2013, she went to the residence listed by Mr. Smith and issued arrest warrants for all three parties at that location, including Alicia Patrick, Mr. Smith, and Defendant, because surveillance indicated that all three of Alicia

---

[1] The affidavit of complaint appears to contain a typographical error. It lists the sex offender statute as Tennessee Code Annotated section "40-39-2011." The proper statute is Tennessee Code Annotated section 40-39-211. This statute prohibits registered sex offenders from "knowingly resid[ing] with a minor" among other things.

Patrick's minor children were probably living at the residence.[2]  When she arrived, all three adults and the three minor children were inside the apartment.  Detective Eller also observed children's clothing, car seats, diapers, and a "Pack'n'Play" portable crib at the apartment.  A school bus driver confirmed that she dropped at least one of Alicia Patrick's children off after school at the same apartment from September of 2013 until "after Christmas."  The driver waited until the child went inside the apartment because the child was in kindergarten.

Defendant testified that Alicia Patrick was in a romantic relationship with Mr. Smith while he was in jail in Virginia.  Mr. Smith got out of jail and "walked the streets for a few days" before Defendant "felt sorry for him and . . . let him register at [her] house."  Defendant testified that Alicia Patrick and her three children were staying at Abuse Alternatives emergency shelter around this time.  Records from Abuse Alternatives confirmed that Alicia Patrick and her three children stayed at the shelter from August 6, 2013, until September 16, 2013.  Defendant claimed that her daughter and children went "to a friend's house" after they left the shelter.  This friend was identified only as "Christy."

Mr. Smith registered as a sex offender on September 30.  Defendant agreed that she and Alicia Patrick, along with two of Alicia Patrick's children, accompanied Mr. Smith to the police station to register.  Defendant denied that Lieutenant Richmond told her Mr. Smith was not allowed to live at the house with the children.  Mr. Smith was arrested and spent a few days in jail.  Defendant eventually "bonded [Mr. Smith] out, [and] he came to [her] house."  This occurred around October 10.

By this time, Defendant claimed Alicia Patrick and her children were staying with "Christy."  Defendant explained that Alicia Patrick would drop off her children to "hang [at the house] during the day."  The oldest child would "go to school" and the two younger children would watch television or play.  After school, the oldest child would ride the bus to the apartment, where the children would "hang around," "eat supper," and take baths.  "Christy" always came to get Alicia Patrick and the children before bed time, around seven or eight o'clock, and they would spend the night at "Christy's" residence.  Defendant was under the impression that Alicia Patrick was "taking care of everything" so she got up each morning to go to work at McDonald's at 4:00 a.m.  Defendant testified that Alicia Patrick and the children were not present at her apartment at that time.

Defendant claimed that she tried to ask Lieutenant Richmond about Mr. Smith's "residential rules" due to his sex offender status but that Lieutenant Richmond actually declined to tell her the rules because she was "not the offender."  Defendant knew that

---

[2] Lieutenant Richmond witnessed at least one of Alicia Patrick's children getting off the school bus at Defendant's apartment and entering the apartment.

Mr. Smith's conviction had to do with a "little girl" and claimed that one of her rules was that Defendant "was never to be alone in [her] house with those kids" or "lay a hand on those children." Defendant recalled that Mr. Smith tried to clothesline one of the children while the child was running through the house but that she "stopped" and "threatened" him. Defendant insisted that Mr. Smith did not spend the night with the children at her house but admitted that the children spent the night with Mr. Smith in Virginia.

The trial judge found Defendant guilty of the offense. The trial judge ordered a background investigation to be completed prior to sentencing. At the sentencing hearing, the trial court noted Defendant's "minor prior record" of one conviction for misdemeanor theft in 1989. The trial court sentenced Defendant to eleven months and twenty-nine days with a "30% release" and required her "to serve 30 days in the county jail as a condition of being put on probation."

Defendant filed a motion for new trial. At the hearing, counsel for Defendant argued that Defendant completed all 240 hours of community service as ordered by the General Sessions Court and had remained on probation for nearly two years prior to being sentenced. The trial court informed Defendant that "[s]he took a de novo appeal" and "when it came [to Circuit Court, the court] had the same options that . . . the [general] sessions judge had." The trial court denied the motion for new trial and informed Defendant she was "going to have to serve her 30 days." Defendant filed a timely notice of appeal. She asks this Court to determine whether the evidence was sufficient to support the conviction and whether the trial court erred in sentencing.

*Analysis*

*Sufficiency of the Evidence*

Defendant argues on appeal that the evidence was not sufficient to support the conviction for facilitation of a violation of the sex offender registry "because the evidence failed to establish, beyond a reasonable doubt, that the children resided with [Mr.] Smith." Specifically, she insists that the proof did not establish that the children were at the residence other than between the hours of 7:00 a.m. and 8:00 p.m. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d

247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *Wagner*, 382 S.W.3d at 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*. The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

The judgment reflects that Defendant was convicted of violating Tennessee Code Annotated sections 39-11-403 and 40-39-208.[3] This appears to be a clerical error. The affidavit of complaint and the proof presented at trial show that Mr. Smith's violation that Defendant facilitated was based on Tennessee Code Annotated section 40-39-211. This statute provides the requirements for establishment of residences and employment for sexual offenders. As related to the case herein, the statute prohibits a sex offender from "knowingly resid[ing] with a minor" unless the minor is the child of the offender. "A person is criminally responsible for the facilitation of a felony, if, knowing that another

---

[3] Tennessee Code Annotated section 40-39-208 is entitled "Violations; Certification" and states, in pertinent part:

(a) It is an offense for an offender to knowingly violate any provision of this part. Violations shall include, but not be limited to:

(1) Failure of an offender to timely register or report;
(2) Falsification of a TBI registration form;
(3) Failure to timely disclose required information to the designated law enforcement agency;
(4) Failure to sign a TBI registration form;
(5) Failure to pay the annual administrative costs, if financially able;
(6) Failure to timely disclose status as a sexual offender or violent sexual offender to the designated law enforcement agency upon reincarceration;
(7) Failure to timely report to the designated law enforcement agency upon release after reincarceration;
(8) Failure to timely report to the designated law enforcement agency following reentry in this state after deportation; and
(9) Failure to timely report to the offender's designated law enforcement agency when the offender moves to another state.

intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403.

The proof at trial established that Mr. Smith was a convicted sex offender who was required to register with the State of Tennessee. The proof also established that Defendant's daughter, Alicia Patrick, was dating Mr. Smith at the time he registered in Tennessee. Alicia Patrick had three minor children. Mr. Smith was not listed as the father on any of the children's birth certificates. Defendant and Alicia Patrick were with Mr. Smith when he registered as a sex offender. All three of the adults—Mr. Smith, Alicia Patrick, and Defendant—were notified by police that Mr. Smith could not live in the apartment with Alicia Patrick's children. Police later visited the address provided by Mr. Smith as his residence and discovered three children, bags of children's clothing that appeared to have been "lived out of," toys, shoes belonging to children, diapers, and a "Pack'n'Play" portable crib. Defendant herself admitted that the children were dropped off at the apartment in the morning and stayed there until around bedtime each night. The school bus picked up and dropped off the oldest child at the apartment. Defendant allowed Mr. Smith to register at her house because he had nowhere else to live. We conclude that the evidence was sufficient to find that Defendant knowingly furnished substantial assistance in allowing Defendant to reside with a minor. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant also complains about her sentence. She claims that because there "was no physical injury, no monetary loss, or other injury to the children or other parties" and because her prior criminal record is "miniscule," she should have been granted a suspended sentence. The State insists that the trial court did not abuse its discretion.

Misdemeanor sentencing is governed by Tennessee Code Annotated section 40-35-302(b) and requires a trial court to impose a sentence consistent with the purposes and principles of sentencing. T.C.A. § 40-35-302(b). Defendants convicted of misdemeanors are not presumed eligible for alternative sentencing, and trial courts are granted considerable discretion and flexibility in misdemeanor sentencing determinations. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998); *see also State v. Combs*, 945 S.W.2d 770, 773-74 (Tenn. Crim. App. 1996); *State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). A defendant convicted of a misdemeanor is not "entitled to the presumption of a minimum sentence." *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Moreover, a trial court is not required to hold a sentencing hearing, but must allow the parties the opportunity to address the length and manner of service of the sentence. T.C.A. § 40-35-302(a). The trial court is not required to place its specific findings on the record. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998).

The standard of review applied in felony sentences, an abuse of discretion standard with a presumption of reasonableness, has also been applied to misdemeanor sentencing determinations. *See, e.g.*, *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Bise*, 380 S.W.3d 682, 706-07 (Tenn. 2012)); *State v. Christopher Dewayne Henson*, No. M2013-01285-CCA-R3-CD, 2015 WL 3473468, at *6-7 (Tenn. Crim. App. June 2, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015); *State v. Su Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013), *perm app. denied* (Tenn. June 18, 2013). This standard of review applies equally to a trial court's decision regarding the manner of service of a sentence. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In imposing a sentence, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement by the defendant in his own behalf. T.C.A. § 40-35-210(b). "[A] trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(d)). The principles of sentencing provide that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* T.C.A. § 40-35-103(2), (4).

Trial courts are encouraged to use alternative sentencing when appropriate. *See* T.C.A. § 40-35-103(6). When determining the manner of service of a sentence, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1). The trial court should consider the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect on the defendant; the defendant's potential or lack of potential for rehabilitation; and the best interests of both the defendant and the public. *State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999); T.C.A. § 40-35-103(5). It is the defendant burden to prove that full probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Carter*, 254 S.W.3d at 347 (internal quotation omitted).

The trial court actually held a separate sentencing hearing. At that hearing, the trial court considered the pre-sentence report prepared by Community Supervision, Inc. which detailed Defendant's sparse criminal history and completion of 240 hours of community service. The trial court also received evidence that Defendant was successful on probation from the time of her conviction in General Sessions Court through her appeal to Circuit Court. The trial court weighed this against Defendant's prior criminal history and the facts of the offense and sentenced Defendant to a within-range sentence of eleven months and twenty-nine days, ordering Defendant to serve thirty days in incarceration before being released to probation. The trial court did not abuse its discretion. Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded for correction of the clerical error in the judgment to reflect Defendant's conviction of facilitation of a violation of Tennessee Code Annotated section 40-39-211.

_____
TIMOTHY L. EASTER, JUDGE